**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 1:18-cv-00014-RM-MJW

DARELL ALAN HYBERG, JR.,

    Plaintiff,

v.

KEN ENSLOW,
TOM RITTENHOUSE,
TIM QUINN, and
MIKE CUNNINGHAM,

    Defendants.

---

# ORDER
---

This matter is before the Court on the February 28, 2019, Report and Recommendation of Magistrate Judge N. Reid Neureiter (ECF No. 41) to grant Defendants' Motion to Dismiss (ECF No. 16) and to deny Plaintiff's request, embedded in his response to the motion to dismiss, to amend the complaint if necessary. Plaintiff has filed objections to the recommendation (ECF No. 45) and a supplement to his complaint (ECF No. 40), which the Court construes as a motion to amend the complaint. Defendants have filed a motion to strike the supplement. (ECF No. 44.) The recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). As explained below, the Court overrules Plaintiff's objections, accepts and adopts the recommendation, grants Defendants' motion to dismiss, and denies Plaintiff's motion to amend the complaint.

# I. LEGAL STANDARDS

This Court reviews de novo any part of the magistrate judge's recommendation that is properly objected to. Fed. R. Civ. P. 72(b)(3). An objection is proper only if it is sufficiently specific "to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). "In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). However, conclusory allegations are insufficient. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009). The complaint must allege a "plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). To determine whether a claim is plausible, a court considers "the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard doesn't require a plaintiff to set forth a prima facie case for each element." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016) (quotation omitted).

A court should allow a party to amend its complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court may deny leave to amend where amendment would be futile.

*Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id.* (quotation omitted).

Finally, the Court is mindful that Plaintiff proceeds pro se; therefore, the Court reviews his pleadings liberally and holds them to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007).

## II.  BACKGROUND

These background facts are taken from Plaintiff's complaint and separately filed supplement and, for purposes of this order, are stated in the light most favorable to him. Plaintiff is an inmate at the Sterling Correctional Facility who, at the times relevant to this case, worked at the Colorado Correctional Industries Seating Factory. As an inmate and a factory employee, Plaintiff was subjected to occasional strip searches. Plaintiff finds strip searches particularly embarrassing and invasive because he has a condition known as gynecomastia, which causes him to have "breasts [that] are deformed and appear feminine." (ECF No. 1 at 6, ¶ 13.) According to the complaint, undergoing seventeen strip searches in two years put Plaintiff "at risk of being targeted by other inmates after they saw his naked body and the appearance of female breasts." (*Id.* at ¶¶ 15, 17.)

On January 24, 2017, Defendant Rittenhouse instructed Plaintiff to "strip out" after completing his shift at the seating factory. (*Id.* at 7, ¶ 19.) At that time, the booths in the common area used for strip outs "provided no real privacy due to the height of the walls [and] the depth of the walls[,] and no screens or privacy barriers were provided." (*Id.* at ¶ 24.) Plaintiff entered a booth, removed his clothing, and, at Defendant Enslow's direction, performed

a routine series of a movements that included separating his penis from his scrotum, lifting his scrotum, bending over, and spreading his buttocks. (*Id.* at 7-8, ¶¶ 26, 28.) Plaintiff then "was forced to get dressed in front of other inmates" before leaving the strip out area. (*Id.* at 8, ¶ 31.) One inmate was less than a foot away, another was four and a half feet away, and a third was washing his hands at a nearby sink, in clear view of Plaintiff. (*Id.* at ¶ 32.) The incident prompted Plaintiff to file a grievance on February 13, 2017, because he believed applicable administrative regulations were not being followed. A short while later, the strip out booths were rebuilt.

On April 17, 2017, a curtain was installed on one of the four new booths, and Plaintiff was again instructed to strip out after his shift. Defendant Quinn instructed Plaintiff to use the booth with a curtain, stating "You get the cubicle with the curtain[.] Just for you." (*Id.* at 11, ¶ 56.) Defendant Quinn directed Plaintiff to perform the same series of movements. (*Id.* at ¶¶ 58-61.) Immediately after giving the final instruction, Defendant Quinn stepped back to allow another inmate to walk past between him and Plaintiff, who was still naked. (*Id.* at 12, ¶ 62.) In reaction to seeing Plaintiff's naked body, the inmate "raised his hands [to block his view of Plaintiff] and said 'WHOA-WHOA-WHOA' as he was leaving the strip out area." (*Id.* at ¶ 65.)

Employees of the seating factory received regular evaluations based on their attitude and performance on which their continued employment depended. (ECF No. 40 at 2-3, ¶¶ 9-11.) After Plaintiff began formally complaining about the strip searches, he stopped receiving his monthly evaluations. (*Id.* at 3, ¶ 12.) Nevertheless, he continued working at the seating factory. Then in January 2019, he received his old evaluations and saw that he had received lower scores after complaining about the strip searches than he had in the previous six years. (*Id.* at ¶ 13.)

Plaintiff alleges that Defendant Enslow, his floor boss, was responsible for filling out the evaluations. (*Id.* at ¶¶ 16, 17.) He also alleges that Defendant Quinn lowered his scores when he printed them due to information he received from Defendant Enslow. (*Id.* at 5, ¶¶ 35, 43.)

## III. ANALYSIS

Plaintiff's complaint contains five claims. The first four are brought under 42 U.S.C. § 1983 for alleged violations of his Fourth Amendment rights by Defendants Enslow, Quinn, Rittenhouse, and Cunningham, respectively. The fifth claim is a § 1983 claim for an alleged violation of his First Amendment rights by Defendant Quinn. In his subsequently filed supplement, Plaintiff also asserts two additional claims for violations of his First Amendment rights by Defendants Quinn and Enslow.

### A. **Fourth Amendment Claims**

Plaintiff's Fourth Amendment claims are based on the legal theory that his strip searches on January 24 and April 17, 2017, were unconstitutional. Plaintiff first objects that the magistrate judge's "main reason" for rejecting his Fourth Amendment claims was a fear that accepting it "would open a floodgate of litigation by inmates." (ECF No. 41 at 25.) However, this statement is not found in the section of the recommendation addressing Plaintiff's Fourth Amendment claims but rather in the section addressing his request to amend the complaint. As discussed below, the recommendation provides sound reasons for rejecting Plaintiff's Fourth Amendment claims. The Court finds that this comment, taken out of context, does not provide a basis for rejecting the magistrate judge's analysis of Plaintiff's Fourth Amendment claims, and therefore this objection is overruled.

Plaintiff also objects that the magistrate judge misstated the law in the recommendation. The recommendation states: "Prison inmates such as Mr. Hyberg do not have a right to complete privacy." (ECF No. 41 at 25.)[1] But strip searches requiring inmates to expose their body cavities for visual inspection are not unconstitutional per se, *Bell v. Wolfish*, 441 U.S. 520, 558 (1979), and the magistrate judge's statement is correct as a matter law. In addition, as discussed in the recommendation, searches that have been found to violate plaintiffs' Fourth Amendment rights were more egregious than the routine searches at issue in this case. (ECF No. 41 at 13-14.) This objection is overruled as well.

Plaintiff next argues that the magistrate judge erred by concluding the complaint fails to state a plausible Fourth Amendment claim. "The Fourth Amendment prohibits only unreasonable searches." *Bell*, 441 U.S. at 558. "[I]nmates' right to privacy must yield to the penal institution's need to maintain security." *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002) (quotation omitted). To determine whether a search is reasonable, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it occurred." *Bell*, 441 U.S. at 559. Here, the complaint alleges that other inmates and prison staff saw Plaintiff's chest and may have briefly seen him naked. The Court agrees that he fails to state a Fourth Amendment violation. First, Plaintiff is not entitled to greater privacy because of his gynecomastia. He has identified no authority to the contrary, and the Court is aware of none. Thus, to the extent his claim hinges on other inmates a prison staff viewing his chest, it necessarily fails. Second, the strip searches occurred in a

---

[1] In his pleading, Plaintiff misquotes the magistrate judge's statement by adding "bodily" before "privacy." (ECF No. 45 at 2.) In the next paragraph, he concedes that he does not have "a complete right to bodily privacy" in prison. (*Id.*)

designated area and followed routine procedures. Even if the procedures violated administrative regulations, as Plaintiff alleges, that would not establish a violation of Plaintiff's constitutional rights. *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[F]ailure to adhere to administrative regulations does not equate to a constitutional violation."); *see also Sandin v. Conner*, 515 U.S. 472, 481 (1995) (stating prison regulations are "primarily designed to guide correctional officials," not "to confer rights on inmates"). To the extent Plaintiff contends that Defendants could have taken additional measures to give him greater privacy, he does not explain what those are, and "prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Jones v. Salt Lake Cty.*, 503 F.3d 1147, 1154 (10th Cir. 2007) (quotation omitted). Having reviewed the allegations in the complaint de novo, the Court concludes the magistrate judge's analysis of this issue is sound, and Plaintiff's objection is overruled.

B. **Retaliation Claims**

Plaintiff asserts First Amendment claims based on two factual scenarios—both are based on alleged retaliation for his February 13 grievance. First, he asserts that Defendant Quinn retaliated against him by the manner in which he conducted the April 17 strip search. Next, he asserts that Defendants Quinn and Enslow retaliated against him by causing him to receive lower scores on his performance evaluations at the seating factory and delaying his receipt of those evaluations.

To state a retaliation claim, Plaintiff needs to show "(1) that [he] was engaged in constitutionally protected activity; (2) that [Defendants'] actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and

7

(3) that the [Defendants'] adverse action was substantially motivated as a response to [his] exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). There is no dispute that filing a grievance constitutes protected activity. *See Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010).

        1.      <u>April 17 Search</u>

Plaintiff objects to the magistrate judge's finding that he did not state a claim for retaliation against Defendant Quinn based on the April 17 strip search. Specifically, he contends that the magistrate judge applied the wrong legal standard with respect to the second element, requiring him to allege a separate constitutional violation. However, in analyzing Plaintiff's retaliation claim, the magistrate judge merely referenced its prior determination that the April 17 strip search did not violate the Fourth Amendment. (ECF No. 41 at 23.) The Court reads this statement as part of a broader explanation for why Plaintiff failed to allege an injury that would chill a person of ordinary firmness from filing a grievance. The magistrate judge also noted that the alleged isolated comments of Defendant Quinn did not rise to such a level. *See Peoples v. Baker*, No. 17-cv-00776, 2019 WL 1200834, *7 (D. Colo. Mar. 13, 2019) ("[A]ctions that are unprofessional or unpleasant, standing alone, do not satisfy the showing."). On de novo review, the Court agrees that being subjected to a constitutional strip search is not a sufficient injury for purposes of stating a retaliation claim. *See id.* ("Although being subjected to an unconstitutional and humiliating public search might be sufficient to [satisfy] the second element, being subjected to a constitutional strip search justified by penological concerns does not."). The objection is overruled.

Plaintiff also contends that the magistrate judge erred by concluding he failed to satisfy the third element of a retaliation claim. But, as pointed out in the recommendation, the complaint alleges that Defendant Rittenhouse, not Defendant Quinn, ordered the April 17 strip search. (ECF No. 1 at 11, ¶ 52.) Plaintiff's does not provide any factual allegations to support the inference that Defendant Quinn was substantially motivated to act maliciously toward Plaintiff due to the grievance. For these reasons, the Court agrees that Plaintiff fails to establish the third element of a retaliation claim, and Plaintiff's objection is overruled.

    2.    <u>Job Evaluations</u>

After the motion to dismiss was referred to the magistrate judge but before the recommendation was issued, Plaintiff filed a supplement that purported to add two retaliation claims to his complaint. Although the motion does not comply with Fed. R. Civ. P. 15(a)(2), which requires written consent or leave of the court to amend a complaint, or D.C.COLO.LCivR 15.1(b), which requires attaching a copy of the proposed or supplemental pleading, the Court will construe the supplement as a motion to amend the complaint. As such, the motion is denied because the complaint, as amended, would be subject to dismissal.

Plaintiff alleges that nearly two years after he filed his grievance regarding the January 24 strip search, he realized he had stopped receiving his job evaluations. But he provides no specific allegations that show a person of ordinary firmness would be chilled from exercising his First Amendment rights if he stopped receiving job evaluations under these circumstances. Plaintiff was not concerned enough, apparently, to inquire about why he was not receiving evaluations for nearly two years while he continued working at the seating factory. Nor does he allege that he suffered any real-world consequence as a result of his lower scores.

Further, his new allegations do not establish any basis for concluding that Defendants Enslow's and Quinn's conduct was substantially motivated as a response to his constitutionally protected conduct. Plaintiff states that "he was simply left in the dark" about why he was no longer receiving the evaluations. (ECF No. 40 at 3, ¶ 12.) His statements regarding why he stopped receiving the evaluations, why his scores were lower, and why either Defendant Enslow or Quinn would be motivated to take such action are entirely speculative.

Based on the absence of factual allegations that would establish the second and third elements of a retaliation claim, the Court concludes that granting leave to amend the complaint would be futile. Accordingly, such leave is denied.

### C.     Remaining Objections and Considerations

Plaintiff's remaining objections warrant only brief discussion. Plaintiff's objection to the magistrate judge's finding of qualified immunity is premised on the conclusion that Plaintiff stated valid First or Fourth Amendment claims. Because the Court finds he failed to state a claim on either theory, Plaintiff's objection to the magistrate judge's qualified immunity determination is overruled.

Plaintiff's objection to the magistrate judge's finding of a lack of personal participation by Defendant Rittenhouse is an alternative basis for concluding Plaintiff failed to state a claim against that Defendant is also unavailing.[2] The Court agrees that the allegation Defendant Rittenhouse ordered Plaintiff to be searched on the two occasions at issue here is insufficient to establish personal participation as a matter of law. "To establish supervisor liability under

---

[2] Plaintiff makes no objection regarding the magistrate judge's determination that he failed to allege personal participation by Defendant Cunningham.

§ 1983, it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (quotation omitted). Even if Defendant Rittenhouse believed the routine procedure violated administrative regulations, as Plaintiff alleges, that does not establish that he actively participated in conduct which violated Plaintiff's rights. Plaintiff's objection offers nothing new on this point and is overruled.

Plaintiff objects to the magistrate judge's determination that he should not be given leave to amend his complaint, as he initially requested in his response to the motion to dismiss as an alternative to dismissal. (ECF No. 30 at 15.) Setting aside that Plaintiff did not comply with Fed. R. Civ. P. 15(a)(2) or D.C.COLO.LCivR 15.1, he also did not provide (in his response to the motion to dismiss) any additional allegations in support of his claims. As a result, the magistrate judge properly denied leave to amend, and Plaintiff's objection to that determination is overruled.

With respect to the findings and determinations in the recommendation that Plaintiff did not object to, the Court further concludes that the magistrate judge's analysis was thorough and sound. The Court discerns no clear error on the face of the record. Therefore, the Court agrees with the recommendation to dismiss Plaintiff's claims and adopts its analysis herein.

## IV. CONCLUSION

Accordingly, the Court

(1) OVERRULES Plaintiff's objections (ECF No. 45);

(2) ACCEPTS and ADOPTS the magistrate judge's recommendation (ECF No. 41);

(3) GRANTS Defendants' motion to dismiss (ECF No. 16);

(4) DENIES Plaintiff's motion to amend the complaint (ECF No. 40);

(5) DENIES AS MOOT Defendants' motion to strike (ECF No. 44);

(6) DENIES AS MOOT Defendants' motion for an extension (ECF No. 46);

(7) DENIES AS MOOT Plaintiff's motions for leave to supplement the complaint (ECF Nos. 47, 50); and

(6) ORDERS the Clerk to enter JUDGMENT in favor of Defendants and CLOSE this case.

DATED this 29th day of March, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge